PJS:WAB:caz

FILED
HARRISBURG, PA

AUG 1 2 2015

MARIA E. ELKINS, CLERK
Per _____

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | )  Criminal No. 1:15-CR-169 |
| | )  (Judge Rambo       ) |
| v. | ) |
| | ) |
| MURRAY ROJAS | ) |

## INDICTMENT

### I. INTRODUCTION

1. At all times material to this Indictment:

    A. Live thoroughbred horse races take place at various venues within the United States of America. These venues included Penn National Race Course (PNRC), which is located in Grantville, PA within the Middle District of Pennsylvania.

    B. PNRC is licensed by the Commonwealth of Pennsylvania to conduct live thoroughbred horse racing and to offer pari-mutuel wagering at its facility in Grantville, PA. These live thoroughbred horse races are simulcast to various other

locations, including locations outside the Commonwealth of Pennsylvania, to allow off-track pari-mutuel wagering on these races. Thoroughbred races run at PNRC are simulcast on any given day to approximately 116 locations including sites within the Commonwealth of Pennsylvania, sites outside the Commonwealth of Pennsylvania, and sites outside of the United States. PNRC is owned and operated by Penn National Gaming, Inc. PNRC opened on August 30, 1972.

C. Members of the betting public who place wagers on thoroughbred horse races expect that the riders will give their best effort in every race and that every horse entered in every race will not be racing with a foreign substance in it that has been administered in violation of racing rules and regulations.

D. Individuals who are trainers of thoroughbred horses in horse racing contests held in the Commonwealth of Pennsylvania are required to be licensed and are thereby subject to various laws, rules and regulations as established by the Commonwealth of Pennsylvania.

E. The laws of the Commonwealth of Pennsylvania, and the various rules and regulations of the Commonwealth of Pennsylvania's Racing Commission (PRC) provide, among other things, that:

> ( i ) The purpose of various sections of Title 58, Pennsylvania Code, including but not limited to §§ 163.302-163.318 is to protect the integrity of horse racing, to guard the health of the horse and to safeguard the interests of the public and the racing participants

through the prohibition or control of drugs and medications or substances foreign to the natural horse.

(ii) A horse participating in a race may not carry in its body a substance foreign to the natural horse except as otherwise provided by Title 58, Pennsylvania Code;

(iii) A person acting alone or in concert may not administer or cause to be administered a substance to a horse entered to race by injection, oral administration, rectal infusion or suppository, or by inhalation within 24 hours prior to the scheduled post time for the first race, except as otherwise provided by the Title 58, Pennsylvania Code.

(iv) A person other than a veterinarian may not have in his possession equipment for hypodermic injection of a substance for hypodermic administration. A person other than a veterinarian may not have a foreign substance, within the area of the race track complex, which can be administered internally to a horse by a route, except for an existing condition and as prescribed by a veterinarian. The supply of the prescribed foreign substance, by a veterinarian, shall be limited by ethical practice consistent with the purposes of this paragraph.

(v) Only one approved nonsteroidal anti-inflammatory drug (NSAID) may be present in the body of a horse while it is participating in a race. The presence of more than one NSAID at any test level is forbidden.

(vi) The owner, trainer, groom or other person who is charged with the responsibility of the horse shall protect the horse against the administration or attempted

administration, either internally or externally, of a drug to the horse.

(vii) The stewards or the Commission, or both, or their designees, shall have the right to enter buildings, stables, rooms or other places within the grounds of an association, and to examine them and to inspect and examine the personal property and effects of a person, within these places. A person granted a license by the Commission, by accepting his license, consents to the search and seizures of hypodermic syringes, hypodermic needles or other devices, and drugs, stimulants or narcotics which could be, used in connection therewith, or appliances-electrical, mechanical or otherwise, other than the ordinary equipment, of the nature as could affect the speed or racing condition of a horse.

(viii) It is a crime in the Commonwealth of Pennsylvania punishable by up to 5 years imprisonment for a person acting with the intent to prevent a publicly exhibited contest from being conducted in accordance with the rules and usages purporting to govern it to tamper with any person, animal or thing. 18 Pa.C.S. §4109.

F. The Pennsylvania Horsemen's Benevolent and Protective Association (PA HBPA) is a division of the national HBPA. The PA HBPA represents the horsemen's (owners/trainers) interests who race at PNRC as well as Presque Isle Downs in Erie, PA. The PA HBPA is comprised of board members made up of owners and trainers, an office staff, and an executive director and associate executive director who run the day-to-day operations at each of the tracks.

G. The Pennsylvania National Turf Club, Inc. (PNTC) and Mountainview Thoroughbred Racing Association, Inc. (MTRA), both referred to collectively as "the Associations", operate and conduct thoroughbred horse race meetings with pari-mutuel wagering at PNRC located in Grantville, PA.

H. The PA HBPA negotiates a live racing agreement with the Associations which covers, among other things, the amount of purse money that will be available for the horse owners/trainers to win for any given race meet as well as a list of proposed locations wishing to receive the simulcast transmissions from PNRC and conduct pari-mutuel or separate pool wagering on races hosted by the Associations.

I. On a daily basis MTRA receives an e-mail message from the Commonwealth of PA informing it of an amount MTRA is to electronically transfer to the Commonwealth's account at PNC Bank in Pittsburgh, PA. This amount represents a percentage of gaming revenue on that day and is calculated by the PA Department of Revenue. MTRA electronically transfers that amount to the Commonwealth of Pennsylvania from revenue generated from slot machines operated by PNG at its Hollywood Casino facility in Grantville, PA.

J. Every Friday the Commonwealth of Pennsylvania notifies MTRA by email message of the amount that the Commonwealth will electronically transfer from its account at PNC Bank in Pittsburgh, Pa to MTRA in the coming week.

MTRA maintains an account at Wells Fargo Bank, N.A., San Francisco, CA specifically to receive these funds which are designated for the purses paid in the indicated week. These funds are intended to be electronically transferred into the PA HBPA purse and benefits accounts at Metro Bank, Lemoyne, Pa.

K. Once MTRA determines that funds to pay purses and benefits has been electronically transferred into its account, a representative of MTRA contacts Wells Fargo Bank, N.A. in San Francisco, CA and has those funds electronically transferred to the PA HBPA accounts at Metro Bank in Lemoyne, Pa. The funds from these interstate electronic transfers are used to pay the purse money for all of the races run in a given month at Penn National Race Track when the PA HBPA reconciles its account with the horsemen's bookkeeper.

L. **MURRAY ROJAS**, defendant herein, is a licensed trainer who trains and races thoroughbred race horses at Penn National Race Track in Grantville, PA. As a trainer, **MURRAY ROJAS** profits if any horse she has in a race finishes in first, second or third place in that ROJAS receives a percentage of the purse money for that race, money that is paid out of the aforementioned interstate wire transfers.

### II. THE SCHEME

From on or about January 3, 2012, up to and including February 16, 2013, 2013, in Dauphin County, Pennsylvania within the Middle District of

Pennsylvania, the defendant **MURRAY ROJAS** devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representation and promise, in that the defendant directed unindicted coconspirator(s) to administer to horses she owned/trained substances that were prohibited from being administered to any horse within 24 hours prior to the scheduled post time for the first race on any given race day. This was done in order for the defendant to obtain a share of the purse money offered for the race in which her horse(s) was entered.

### III. MANNER AND MEANS

A. It was a part of the scheme to defraud that the defendant, **MURRAY ROJAS**, would submit instructions to a veterinarian regarding what substance(s) **MURRAY ROJAS** wanted administered to a particular horse(s). The substance(s) was/were to be administered on the date the horse was entered to run and within 24 hours of post time for the first race that day in violation of racing regulations and the criminal laws of Pennsylvania.

B. It was further a part of the scheme to defraud that the veterinarian(s) with whom **MURRAY ROJAS** conspired would then administer to the particular horse(s) according to the defendant's instructions the substance(s) that was/were

prohibited from being administered within 24 hours of post time for the first race of the day the horse(s) was entered to race.

    C. It was further a part of the scheme to defraud that the veterinarian(s) submitted fraudulent documents to the Pennsylvania Racing Commission to conceal the administration of the prohibited substances. The veterinarian would submit a treatment form to the PRC within 24 hours of treating a horse at the track on the day it raced and list all substances administered by the veterinarian to said horse(s). To conceal the prohibited treatment the veterinarian would either list the substances but back date the official form to make it appear the substances were administered outside of the prohibited time frame, or would properly date the treatment form but omit entirely from the form the prohibited substances that were administered to the horse. The submission false treatment reports to the PRC permitted the horse(s) in question to compete in the race it was entered and to receive a share of the purse money when the horse should otherwise have been disqualified from competing. This defrauded the other horse owners/trainers with horses running in the same race(s), as well as defrauding the betting public and the PRC. For these same purposes the veterinarian would often back date invoices submitted to the defendant so that the date of the sale and administration of the substances would appear to be outside of the prohibited time frame.

D. It was further a part of the scheme to defraud that, at the direction of **MURRAY ROJAS,** the veterinarian administered, in violation of the criminal laws and the rules and regulations governing thoroughbred horse racing in Pennsylvania, substances such as Estrone, Robinol, Dexamethasone and Legend to the following horses **MURRAY ROJAS** had entered on the following dates earning a total of $52, 396.00 in purse money:

1. FIONA WILL WIN – 1st race – January 19, 2013
2. CUVEE AVENUE  -  6th race – January 19, 2013
3. FAT JACK – 9th race – January 25, 2013
4. UR JOSHN ME – 3rd race – January 26, 2013
5. NO DETOUR – 4th race – January 31, 2013
6. BUCKHORN  - 6th race – January 31, 2013
7. CUVEE AVENUE – 4th race – February 14, 2013
8. O WHEN THE SAINTS – 6th race – February 14, 2013
9. BUCKHORN – 8th race – February 14, 2013
10. UR JOSHN ME – 2nd race – February 16, 2013
11. FAT Jack – 7th race - February 16, 2013

**THE GRAND JURY CHARGES THAT:**

## COUNTS ONE - FOUR

All of the preceding paragraphs of this Indictment are incorporated in these counts of the Indictment as if fully restated herein.

Beginning on or about January 19, 2013, up to and including March 1, 2013 in Dauphin County, Pa, within the Middle District of Pennsylvania, and elsewhere, the defendant,

**MURRAY ROJAS,**

for the purpose of executing the scheme and artifice described herein, caused to be transmitted by wire communication in interstate commerce, the signs, signals, pictures and sounds described below for each count, each transmissions constituting a separate count:

| Count | Date | Wire Transmission |
|---|---|---|
| ONE | February 1, 2013 | electronic transfer of purse funds from Wells Fargo Bank, San Francisco, CA to Metro Bank, Lemoyne, PA |

| **Count** | **Date** | **Wire Transmission** |
|---|---|---|
| TWO | February 8, 2013 | electronic transfer of purse funds from Wells Fargo Bank, San Francisco, CA to Metro Bank, Lemoyne, PA |
| THREE | February 25, 2013 | electronic transfer of purse funds from Wells Fargo Bank, San Francisco, CA to Metro Bank, Lemoyne, PA |
| FOUR | March 1, 2013 | electronic transfer of purse funds from Wells Fargo Bank, San Francisco, CA to Metro Bank, Lemoyne, PA |

**THE GRAND JURY FURTHER CHARGES THAT:**

**COUNT FIVE**

Counts One through Four of this Indictment are incorporated in this Count of the Indictment as if fully restated herein.

Beginning on or about January 19, 2013, up to and including March 1, 2013 in Dauphin County, Pa, within the Middle District of Pennsylvania, and elsewhere, the defendant,

**MURRAY ROJAS,**

combined, conspired, confederated and agreed with a person and persons known to the grand jury, to execute a scheme and artifice to defraud by causing to be transmitted by wire communication in interstate commerce, the signs, signals, pictures and sounds for the purpose of executing said scheme and artifice to defraud, more fully described in Counts One Through Four.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL

FOREPERSON

August 12, 2015
DATE

Peter J. Smith/WQB
PETER J. SMITH
UNITED STATES ATTORNEY